325 So.2d 242 (1975)
Glenda Faye WEST
v.
Herman Wayne ORTEGO.
No. 56232.
Supreme Court of Louisiana.
December 8, 1975.
*243 Preston N. Aucoin, Villa Platte, for plaintiff-applicant.
J. Winston Ardoin, DeVillier, Ardoin & Morrow, Eunice, for defendant-respondent.
CALOGERO, Justice.
The issue before us in this case is whether workmen's compensation benefits received by a husband subsequent to dissolution of the community of acquets and gains, and representing post-injury benefits for the periods both before and after dissolution of the community, fall into the previously existent marital community.
We granted writs in this case to clarify the jurisprudence in this area.
The facts of the case are undisputed. Defendant Herman W. Ortego, the husband, sustained a disabling industrial accident on or about June 4, 1974. The accident occurred during the course and scope of his employment with Chapman Drilling Company. On June 14, 1974, about ten days after the accident and prior to receipt of any compensation benefits, the plaintiff-wife, Mrs. Glenda West Ortege, filed suit for separation from bed and board on the grounds of cruel treatment and abandonment. Judgment of separation was rendered in Mrs. Ortego's favor on June 24, 1974, issue having been joined after defendant answered and reconvened. Later, on September 26, 1974, Mrs. Ortego filed a petition for a temporary restraining order and preliminary injunction, alleging that Mr. Ortego had settled or was about to settle his claim against Chapman Drilling Company and averring that she was entitled to one-half of any such settlement. On December 9, 1974, a preliminary injunction was granted, the effect of which was to declare her entitled to one-half of her husband's workmen's compensation benefits but only as to that portion "which [had] accrued prior to the dissolution of the community . . . ."[1] She was denied relief as to a half interest in the more substantial portion of the prospective compensation settlement,[2] that which is attribtable to the period of time following dissolution. Mrs. Ortego therefore appealed.
The Third Circuit Court of Appeal affirmed the trial court judgment,[3] and Mrs. *244 Ortego sought writs from this Court, which were granted.[4]
The particular issue presented insofar as it concerns workmen's compensation benefits is one of first impression. In three earlier cases, however, the courts of this state have been presented the problem of determining the separate or community nature of funds received after dissolution of the community for personal injuries suffered by the husband during the existence of the community regime. In two of those cases the husband's action for damages arose under Article 2315 of the Louisiana Civil Code. See Talley v. Employers Mutual Liability Ins. Co., 181 So.2d 784 (La.App. 4th Cir. 1965); writ refused, 248 La. 785, 181 So.2d 783 (1966); Alfred v. Alfred, 237 So.2d 94 (La.App. 3rd Cir. 1970), writ granted, 256 La. 847, 239 So.2d 356 (1970) [case not decided by this Court apparently because settled prior to argument]. In the third, the husband's settlement was under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. Chambers v. Chambers, 259 La. 246, 249 So.2d 896 (1971).
Counsel for Mr. Ortego suggests, alternatively, at least, that we avoid a critical analysis of these cases by holding that, while the husband's actions for damages in the three cited cases were for offenses or quasi-offenses and were thus perhaps covered by Articles 2334 and 2402 of the Civil Code, Mr. Ortego's claim in this case, for recovery of workmen's compensation benefits, is not for an offense or quasi-offense.
Although that argument is not entirely implausible, we are inclined to believe that a workman's compensation claim is more likely than not founded upon an offense or quasi-offense,[5] just as was the Chambers claim. There, plaintiff's claim was based upon the Federal Employers Liability Act, which was a forerunner to the state workmen's compensation statutes in this country, including our own.[6]
The Talley, Alfred, and Chambers cases involved interpretations of Articles 2334[7] and 2402[8] of the Louisiana Civil Code. *245 These two articles, which appear in Book III, Title IV of the Code, categorize the property of married persons into either separate or community property. They clearly establish that a wife's "damages resulting from personal injuries" (Art. 2402), and her "actions for damages resulting from offenses and quasi-offenses" (Art. 2334) are her separate property. The articles, however, are not as generous to the husband relative to such damages and/or actions. Article 2334 provides only that "actions for damages resulting from offenses and quasi-offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property."
The negative implication of the foregoing provision is that a husband's action for damages, resulting from offenses and quasi-offenses suffered by the husband while still living with his wife or while living apart from her for reasons other than her fault, is community property. Because of this implication and because of the use of the term "actions for damages" in the same provision, the plaintiff-wife argues in this case, as the plaintiff did in Chambers, that the Legislature intended for damages collected after the dissolution of the community by separation or divorce, compensating for losses which include post-dissolution losses to the husband, to be nonetheless community property. For reasons we express hereinafter, we find the argument unconvincing and relator's position without support.
Louisiana's community property system, embodying the community of acquets and gains, exists by operation of law and may only be avoided by express stipulation to the contrary. C.C.Articles 2332, 2399, 2401. While the community is in existence, the husband (and the wife as well) may acquire separate property in only a limited number of ways, including inheritance or donation. Property acquired during marriage in any manner different from those designated is "common" or community property. C.C.Articles 2334, 2401. One of the major considerations behind the community property system is to recognize and reward a wife's industry and labor (or the husband's, in the less frequent situation where the wife may be the principal breadwinner) which may only indirectly serve to enhance the community financially. During the existence of the community, therefore, money acquired, the husband's as well as the wife's, falls into the community with the attendant advantage to the less productive spouse in the event of dissolution.
The community regime does not exist perpetually, however. It is terminated by death of either spouse, and may be terminated volitionally by a judicial separation of property sought by the wife, Art. 2425 et seq., or by either spouse's obtaining a judgment of separation from bed and board or a judgment of divorce. Arts. 155, 159. Once the community is terminated, certain property which had been community ceases to be so. Fruits or profits from the separate property of the husband, or from the separate property of the wife formerly administered by the husband,[9] become once again the separate property of the owner thereof. Earnings by either party likewise become his (or her) separate *246 property following separation, divorce, or death of the spouse. The community ceases to exist as a legal entity, and future income or other enrichments belong alone to the party receiving it. The reason for this is that there is no longer the reciprocal industry, effort, and support which justifies and is the basis for the equitable fifty-fifty system.
Recovery for injury, whether it be by judgment or settlement, or whether it be for an offense, quasi-offense or a work-related accident, frequently involves an element of damages to compensate for future losses. Our judicial system normally demands that an injured party assert all claims for damages at one time, and damages for future losses are estimated and awarded in advance. This procedural requirement does not negate the fact that the injury for which a party is being compensated frequently occasions losses of earnings, medical expenses, and pain and suffering to be suffered on daily, weekly, monthly and/or annual bases. While a husband and wife are living together and the community is still in existence, it is reasonable to designate these damages as community property. However, when the community has been terminated, it is both unreasonable and inequitable to deprive the husband of funds which are to sustain him into the future, or compensate him for future pain, suffering and disability merely because the law has required assertion of all such damages as part of a single claim.
With the foregoing principles in mind we turn to a discussion of the jurisprudence as it existed at the time the Court of Appeal handed down its decision in this case favorable to the husband on the narrow issue before it.
The first reported case was Talley v. Employers Mutual Liability Insurance Co., supra in the Fourth Circuit Court of Appeal, in 1965. In very brief treatment of one of many issues in the case, that appellate court divided the award received by the husband, awarding to the community the portion thereof which represented losses which accrued prior to its dissolution, and awarding to the husband as his separate property the portion which represented losses to the husband, i.e., permanent injury and future loss of income, which were projected to accrue after termination of the community regime. This Court denied writs. However, the Court of Appeal's division of the award was not presented as an assignment of error, for the application was by a defendant insurance company complaining of an adverse finding on liability. Neither the husband nor the wife in Talley sought writs from this Court.
The next case involving the issue was Alfred v. Alfred, supra. The Third Circuit Court of Appeal in that case followed the rationale of Talley and gave the community that share of damages which accrued prior to the date the community of acquets and gains was terminated. This Court granted writs but as already indicated the case was apparently compromised before oral argument in this Court.
The third case above cited was Chambers v. Chambers, supra. The First Circuit Court of Appeal in Chambers had determined, just as in Talley and Alfred, that the community was entitled only to that share of the damages which accrued during its existence and had remanded the case back to the district court for a determination of the various items comprising the undesignated lump sum settlement received by the husband, and for ascertainment of the pre-dissolution and post-dissolution damage portions of the settlement. Writs were granted by this Court upon application of both the husband and wife. What precisely this Court held as a matter of law in Chambers is unclear. As indicated, that lack of clarity prompted the grant of writs in this case.
The principal opinion in Chambers drew two concurrences and two dissents. It seemingly followed the rationale of Talley, Alfred, and Chambers in the Court of Appeal *247 when it asserted that the wife "is not entitled to participate in that portion of the settlement funds that compensate [the husband] for damages accruing after the dissolution of the community regime." However, that opinion went on to reverse the Court of Appeal and affirm a trial court judgment which had decreed the settlement community and had awarded the wife onehalf of the settlement, because the Court found, considering the lapse of time and other problems incident to reconstructing the elements of the settlement, that remand for the purpose of determining the pre-dissolution and post-dissolution damage elements would be a vain and useless thing.
The Chambers court issues a per curiam on application for rehearing which prompted a third dissent. That per curiam, reciting the sentiments of the two Justices who had concurred in the original opinion, related that "the majority intended to hold that the time the husband's cause of action arises, determines the community or separate nature of the cause of action and the community or separate nature of the funds obtained when the suits on the cause of action were settled."
One of the Justices, dissenting from refusal to grant rehearing and from filing of the per curiam, cautioned that "the per curiam here filed, when read with the majority and dissenting opinions, will clearly indicate the diversity of view of this court, and that the per curiam is not a majority view." 249 So.2d at 907. His warning was an accurate forecast.[10]
In this historical, jurisprudential context, we proceed to resolve the legal issue and decide the case at hand.
Mr. Ortego proposes to settle his workmen's compensation claim following dissolution of his marriage, the claim having arisen from an accident which occurred ten days before the marital community was terminated. He is due benefits, principally weekly sums which are designed to substitute for earnings which, but for the accident, he would be generating on a continual basis. Only a negligible sum is apparently due him for the period prior to termination of the community.
Absent a clear, unequivocal, statutory dictate to the contrary, and assuming that logic, good sense and commendable social policy, as well as the principles underlying the community property system, are to prevail, post-dissolution compensation falls into the injured husband's separate estate rather than into the extinct marital community.
Do the applicable articles of the Civil Code, then, clearly and unequivocally dictate that monies received by a husband after dissolution of the community, in settlement of a pre-dissolution accident-related cause of action, fall into the terminated community?
Focusing upon the money settlement as the property acquired, it is apparent that such money is not acquired by the husband during the marriage. (Art. 2334, 5th paragraph).
A problem arises only because such settlement money is derived from a cause of action which arose during the marriage, and the cause of action, being "the property of the obligee,"[11] is "common property," or community property.
*248 At least two members of this Court in Chambers felt that money received, even post-dissolution, in settlement of a cause of action which is community property must necessarily, in full, fall into the community.
We do not conclude that this is so, for several reasons.
As already indicated, such a result is not consistent with the underlying principles upon which our community property system is based. Beyond this theoretical argument, however, interpreting the specific provisions of law, we find that the provision most nearly applicable, the fifth paragraph or omnibus provision of Art. 2334,[12] was incorporated in our present article 2334 in the year 1825, long before divorce became commonplace and at a time when multitudes of tort claims and statutorily created workman's compensation claims had not yet been spawned by the industrial revolution of this country. We do not believe that the Legislatures of the State of Louisiana which enacted Articles 2334 and 2402, and their amendments, foresaw or intended the effect of those articles here urged.
Furthermore, nowhere in the articles is it plainly stated or clearly implied that damages received by a husband after termination of the community, to compensate for future wage and other losses, should fall into a dissolved community. In our view such an expression or clear implication, by inference or otherwise, cannot be gleaned from the fourth paragraph of Art. 2334,[13] which while directing that certain actions for damages resulting from offenses and quasi-offenses suffered by the husband are the husband's separate property, with the inference that other actions are community, does not address itself to monies acquired after termination of the marital community, nor to the hiatus in the law with which we are here concerned.
Somewhat better than the foregoing argument, but still not convincing, is the wife's finding support in the omnibus provision of Article 233[14] which by direct implication designates as community the husband's personal injury action for damages generally. However, this argument succeeds only if we must necessarily conclude that monies derived from settlement of the cause of action, even after dissolution of the community, are identical with or inherently the same as a cause of action. Logic does not compel this interpretation, for equally as plausible is the conclusion that the money acquired after dissolution of the community (identified as separate property of the husband by virtue of the time of its receipt) is a species of thing different from a cause of action.
More defensible than either of the foregoing, we believe, is this view of the problem: that there is no positive law resolving the issue before us. Resort to equity, i.e., to natural law and reason, is therefore in order.[15]
Applying the foregoing principles, we conclude that where a husband's settlement monies, acquired after dissolution of the community, but based upon a pre-dissolution, accident-related cause of action, compensate *249 for both pre-dissolution and postdissolution losses, that portion of the settlement which compensates for post-dissolution losses falls into the separate estate of the husband.
Ascertaining the post-dissolution portion of the settlement in the case at hand is quite simple in view of the fact that the bulk of the prospective compensation settlement represents weekly fixed sums. Ascertaining the respective portions of a non-workmen's compensation personal injury settlement (or jury verdict, for that matter), while not quite as simple, is nonetheless possible.
To the extent that Chambers v. Chambers, supra, is in conflict with this opinion, it is overruled.
We are not unmindful that a logical extension of the rationale here employed might require that an entire post-dissolution settlement be classed as the separate property of the husband (because it was fully acquired after dissolution).[16] And, focusing entirely upon the underlying community property principles, one might conclude, for reasons just as compelling as those in Chambers and in this case, that compensation in part for post-dissolution losses received pre-dissolution, are partially the separate property of the husband. Suffice it to say that the latter hypothet is not presented by the facts in this case, and the former, while factually present here, is not procedurally before us.[17]
For the reasons assigned the judgment of the district court and the Court of Appeal are affirmed.
SUMMERS, J., concurs and assigns reasons.
DIXON, J., dissents with reasons.
MARCUS, J., dissents and assigns reasons.
SUMMERS, Justice, (concurring).
In my view workmen's compensation payments, or settlements, are substitute "earnings", awarded because the recipient has been disabled. These awards are not damages in the true sense, and are not recovered as such because of the fault of the employer. They are substitutes for earnings, "compensation" which the State requires an employer to pay on account of an industrial accident to enable the employee to survive and not become a public charge. Therefore, these compensation awards, when paid weekly, fall into the community during its existence. When the community is dissolved these weekly "earnings" paid thereafter belong to the husband's separate estate.
A lump sum settlement does not alter the result. When the settlement is made after dissolution of the marriage, an accounting is due to the wife for that portion of the settlement attributable to the time when the community of acquets and gains existed. That portion attributable to the post marital period belongs to the husband.
I cannot subscribe to those expressions in the opinion relating to "damages", for I find none involved here and consider those statements to be dicta.
I, therefore, concur.
DIXON, Justice (dissenting).
I respectfully dissent.
This is one of the cases in which we should feel bound to permit the legislature to change the law.
Simply because of a questionable sense of fairness, the majority now holds that *250 property and rights acquired during the existence of the marriage do not necessarily fall into the community regime.
A cause of action is property. Its date of acquisition can be determined. There is no legislative exception which would permit its division into part community and part separate property.
Chambers v. Chambers, 259 La. 246, 249 So.2d 896 (1971), deserves criticism. Nevertheless, the per curiam adopted by a majority of this court after due deliberation made it clear that a majority of the members of this court understood the law to be that the time of acquisition of the husband's cause of action determines the community or separate nature of that cause. The majority thought the law should be changed because "justice required it." There is no more compelling reason to treat this kind of community property any different from other kinds of community property which are capable of and destined to produce income and wealth after the dissolution of the community.
MARCUS, Justice (dissenting).
In my view, a husband's action for damages resulting from offenses or quasi-offenses occurring during the existence of the community is common property unless he has suffered the injuries while living separate and apart from his wife under circumstances entitling him to separation or divorce from her by reason of her fault. On the other hand, actions for damages for personal injuries to the wife occurring during the community form part of her separate patrimony. Articles 2334 and 2402 of the Civil Code clearly dictate this conclusion. Article 2334 provides in pertinent part:
. . . actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property.
Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.
Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared.
(Emphasis added.) Article 2402 provides in pertinent part:
. . . But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone . . . .
Accordingly, I respectfully dissent from the majority opinion which holds otherwise.
NOTES
[1] The June 24, 1974 judgment of separation terminated the community as of June 14, 1974, the date the separation suit was filed. La.C.C. Art. 155.
[2] We assume the compensation benefits which accrued and/or are to accrue after June 14, 1974, to be more substantial than those accruing between June 4 and June 14. However, the record nowhere indicates the extent of the claim or the amount thereof, nor even that a settlement has been agreed upon.
[3] West v. Ortego, 309 So.2d 883 (La.App.3rd Cir. 1975).
[4] 313 So.2d 600 (La.1975).
[5] See Art. 2292 and Articles 2315-2334 La.C.C.
[6] Malone, Louisiana Workmen's Compensation Law and Practice, § 12.
[7] Article 2334 provides:

"The property of married persons is divided into separate and common property.
Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.
The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property.
Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.
Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it cannot be mortgaged or sold by the husband without her written authority or consent.
Where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold by the husband without the wife's written authority or consent where she has made a declaration by authentic act that her authority and consent are required for such lease, sale or mortgage and has filed such declaration in the mortgage and conveyance records of the parish in which the property is situated." (As amended Acts 1962, No. 353, § 1) (Emphasis provided)
[8] Art. 2402 provides:

"This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; `provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws.'" (As amended by Acts 1902, No. 68) (Emphasis provided)
[9] A wife may, of course, preserve the fruits of her separate property as separate by fulfilling the requirements of Article 2386.
[10] The judge who wrote the majority opinion in the instant case in the Court of Appeal stated: "We opine from the foregoing, however, that the holding intended in Chambers, by a majority of the Court, is not entirely clear from a reading of the opinion." A second judge of that Court of Appeal concurred in the result "having doubts as to the precise meaning of Chambers v. Chambers." Legal commentaries following Chambers indicate that confusion was created by that decision. See Chambers v. Chambers: An exercise in Confusion, 1 Tul. Civil Law Forum 1 (1973); Pascal, Matrimonial Regimes, Work of Appellate Courts1970, 1971, 32 La.L.Rev. 219 (1972); 46 Tul.L.R. 836 (1972); 31 La.L.Rev. 425 (1971).
[11] Art. 426, C.C.P.
[12] C.C. art. 2334 (5th paragraph): "Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared."
[13] "Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property." This provision was added to Art. 2334 by an amendment to the article in the year 1920.
[14] See the underscored portion of the fifth paragraph of Art. 2334 contained in footnote 7, supra.
[15] "Art. 21. Absence of express law, court's duty to decide equitably.

"In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent."
[16] But note the contrary view expressed in the principal dissent in Chambers, at 249 So.2d 906.

"There is of course, little question as to her right under state law to share in damages attributable to loss prior to the divorce; those damages fall into the community by virtue of Civil Code articles 2334, 2402."
[17] The husband did not appeal from that part of the trial court judgment which allowed his wife one-half of the pre-dissolution benefits.