370 So.2d 190 (1979)
Shirley VINCENT, Plaintiff and Appellant,
v.
Joseph Jessie LEMAIRE, Defendant and Appellee.
No. 6940.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1979.
*192 Thompson & Sellers by Roger C. Sellers, Abbeville, and Darrell J. Hartman, Kaplan, for plaintiff-appellant.
Theall & Fontana by Anthony J. Fontana, Jr., Abbeville, Wade A. Mouton, Kaplan, for defendant-appellee.
Before CULPEPPER, CUTRER and STOKER, JJ.
CULPEPPER, Judge.
This suit originated with a petition by the plaintiff wife, Shirley Vincent, seeking a separation from bed and board from the defendant husband, Joseph Jessie Lemaire. The judgment of separation was rendered on August 25, 1975 and is not at issue on this appeal. On August 10, 1977 the plaintiff wife filed a petition for partition of community property. The only community asset alleged is the sum of $200,000 received by the defendant husband on or about August 4, 1977 in settlement of his claim for personal injuries under the Jones Act, arising out of an accident which occurred on January 5, 1975. The cause of action under the Jones Act arose during the existence of the community, but the settlement funds were not received by defendant until after the dissolution of the community.
At the time of filing her petition for partition, the wife also obtained a temporary restraining order, without a bond, enjoining the defendant husband from disposing of any of the settlement funds. On August 12, 1977, the defendant husband obtained an order reducing the amount restrained to $50,000, and, on the same date, an order that plaintiff post a bond in the sum of $5,000 as security for any damages sustained by defendant because of the wrongful issuance of the temporary restraining order. Pursuant to a later rule to fix the amount of these damages, the court rendered a judgment on February 8, 1979 awarding the defendant husband $500 as attorney's fees, but referred the question of any other damages to the merits. On the trial of the merits, the district judge held that of the $200,000 in settlement funds, $18,342.52 was owned by the community, $3,342.52 being for lost wages and $15,000 being for pain and suffering during the community. The plaintiff wife appealed. The defendant husband answered the appeal.
The plaintiff wife contends the trial court erred in: (1) Failing to order the production of a settlement brochure prepared by defendant's attorneys during negotiation of his personal injury claim. (2) Awarding defendant $75 in attorney's fees for opposing plaintiff's motion to produce the settlement brochure. (3) Failing to allow plaintiff to take the depositions of two psychiatrists who treated defendant. (4) Placing the burden of proof upon plaintiff to show what portion of the settlement funds were owned by the community. (5) Quashing subpoenaes duces tecum to defendant's attorney and the insurance adjuster to produce their files in connection with the settlement. (6) Finding that only $18,342.52 of the $200,000 settlement is owned by the community.
In his answer to the appeal, the defendant husband contends the trial court erred in: (1) Not following the itemization of the settlement funds in the judgment of August 4, 1975 approving the Jones Act settlement. (2) Denying defendant's reconventional demand for damages in the sum of $95,200 for wrongful issuance of the temporary restraining order. (3) Failing to recall the preliminary injunction upon rendition of the partition judgment.

GENERAL FACTS
The general facts are that plaintiff and defendant were married in 1956. On January 5, 1975, at which time defendant was 49 years of age, he was injured while working as a seaman for Brown & Root, Inc. off the coast of Brazil. The barge he was on was struck by a wave, causing him to fall backward *193 and strike the back of his head. He was flown to New Orleans, where he was seen by physicians and hospitalized. On about April 1, 1975, he returned to his home in Vermilion Parish. Within the next few days, he went to physicians in Lafayette, complaining of pain in his head, neck and shoulders. He was admitted to the hospital in Lafayette. While there he developed behavioral changes later diagnosed as post-traumatic paranoid psychosis. On his return to his home with his wife and children, his behavior became so erratic and irrational that on about May 1, 1975 he was sent to Central State Hospital in Pineville, Louisiana. There his condition was diagnosed as psychosis with brain trauma and as psychotic depressive reaction. After about 15 days at Central, he returned to Kaplan to his wife and children. But his behavior again became irrational and he was recommitted to Central State Hospital. On July 15, 1975, he returned to Kaplan but lived with his oldest son. His wife stated that he had ordered her out of the house. On July 28, 1975, his wife filed the suit for separation.
After the separation, defendant continued to have serious medical problems. In early 1976, he complained of back pain and was finally diagnosed as having a herniated cervical disc for which he underwent surgery. He continued to complaint of headaches which were diagnosed as left occipital neuralgia, for which a neucretomy was performed in January of 1977. This latter surgical procedure relieved the severe headaches, but plaintiff continued to suffer from back complaints and depression up until the time of the Jones Act settlement, with only a fair prognosis for recovery, provided defendant receive continued psychiatric treatment.
Having stated the general facts, we will now address plaintiff's contentions of error in the order listed above.

FAILURE TO ORDER PRODUCTION OF SETTLEMENT BROCHURE
Plaintiff's first contention is that the trial judge erred in denying her motion to produce the settlement brochure, a document prepared by defendant's attorneys in negotiating the settlement of the Jones Act claim. The trial judge denied the motion to produce the brochure for three reasons: (1) LSA-C.C.P. Article 1424 prohibits the discovery of an attorney's work product. (2) All information contained in the brochure, except the attorney's work product, and in particular all of the medical records in defendant's possession at the time of preparation of the brochure, had already been supplied to the plaintiff. (3) Much of the information sought by plaintiff from the brochure is irrelevant to the present partition of the community which existed for only seven months after defendant's accident.
We agree with the trial judge's ruling. The record shows defendant's attorneys furnished to plaintiff all the medical evidence in their possession. This was the principal evidence plaintiff needed to prepare for trial of this partition of the settlement funds under the rules established in West v. Ortego, 325 So.2d 242 (La.1975). In West the court held that where a spouse is injured during the community, but the settlement of the claim is made after dissolution of the community, that portion of the settlement funds which compensates for predissolution damages is owned by the community, and that portion of the settlement which compensates for post-dissolution damages falls into the separate estate of the injured spouse. Thus, the issue in the present case was how much of the settlement funds compensated for damage to the community during the seven months between the time of the accident and the time of dissolution. Defendant furnished to plaintiff all of the medical records concerning this issue. Clearly, the trial judge did not abuse his discretion in finding that the other portions of the brochure were either the attorney's work product or were irrelevant.
Moreover, any error by the trial judge in refusing to order production of the brochure was not sufficiently prejudicial to require reversal. The record shows that at the trial on the merits the parties introduced medical and other evidence as to loss *194 of wages and pain and suffering sufficient to decide the issue of apportionment of settlement funds between the community and defendant's separate estate.
ATTORNEY'S FEES FOR SUCCESSFULLY OPPOSING PLAINTIFF'S MOTION TO PRODUCE BROCHURE
Plaintiff next contends the trial judge erred in awarding defendant $75 in attorney's fees for successfully opposing plaintiff's motion to produce the brochure. LSA-C.C.P. Article 1469(4) gives the trial judge discretion to allow such attorney's fees. We find no abuse of such discretion in this case.

DEPOSITIONS OF PSYCHIATRISTS WHO TREATED DEFENDANT
Plaintiff next contends the trial court erred in failing to allow her to take the depositions of two psychiatrists who examined and treated the defendant at the Central Louisiana State Hospital in Pineville, Louisiana. The trial judge's ruling was based on the refusal of the defendant to consent to the release of this privileged medical information. LSA-R.S. 13:3734 provides that a physician cannot, without the consent of the patient, give any information required in attending the patient.
Plaintiff contends that in the present case an exception to the statutory rule should be made, similar to the exception stated in the statute that where the patient brings an action to recover damages he shall be deemed to consent to the release of the privileged medical information.
The defendant correctly points out that this is not a suit by the patient for damages, and thus the exception stated in the statute has no application. Defendant also points out that a holding that the present case constitutes an exception to the doctor-patient privilege would not only be contrary to the statute but would be a dangerous precedent in future cases. We agree.
Moreover, the record shows that defendant furnished plaintiff with all relevant medical evidence in his possession. We can readily understand defendant's reluctance to consent to depositions by these two psychiatrists who treated him in a mental institution.

BURDEN OF PROOF
Plaintiff next contends the trial judge erred in his ruling in a pretrial motion that plaintiff has the burden of proving what portion of the settlement funds were owned by the community. Plaintiff quotes from LSA-C.C. Article 2405: "At the time of the dissolution of the marriage, all effects which both husband and wife reciprocally possess, are presumed common effects or gains, . . . ." Under this article, plaintiff argues that since the cause of action under the Jones Act occurred during the community, it is presumed to be a community asset, and the settlement funds, although received after dissolution of the community, must also be presumed community until the contrary is proven by defendant.
The problem is difficult, as can be readily seen from a reading of the decisions in Chambers v. Chambers, 259 La. 246, 249 So.2d 896 (1971); West v. Ortego, 325 So.2d 242 (La.1975) and Broussard v. Broussard, 340 So.2d 1309 (La.1977). Our Supreme Court did not expressly discuss the burden of proof in any of these cases. One court of appeal case, Barton v. Barton, 349 So.2d 1013 (2d Cir. 1977), holds in a factual situation almost identical to that in the present case, that the wife has the burden of proving what portion of the settlement funds compensates for pre-dissolution damages.
In the present case, we find it unnecessary to decide whether the husband or the wife had the burden of proof. Regardless of who had the burden, sufficient evidence was introduced to decide what portion of the settlement funds is owned by the community and what portion is owned by the husband's separate estate.

QUASHING SUBPOENAES DUCES TECUM
Plaintiff next asserts the trial judge erred in quashing plaintiff's subpoenaes *195 duces tecum issued to Mr. James Diaz, one of defendant's attorneys, and to Mr. John Bosworth, adjuster for Brown & Root's insurer, for each to produce his file in connection with the Jones Act settlement. Plaintiff contends these files would show respectively how defendant's attorney and the insurance adjuster evaluated the claim, and that this material was needed by plaintiff to show the amounts of the settlement which were paid for pain and suffering, loss of wages and other items of damages.
Defendant's motion to quash the subpoenaes alleged: (1) That plaintiff had not deposited with the clerk of court the costs required for persons living outside the parish, as required by LSA-R.S. 13:3661. (2) That the material sought is protected by the attorney-client privilege. (3) That the material sought is irrelevant to the partition.
We do not find in the record the reasons for the trial judge's order quashing the subpoenaes. Nevertheless, even if the ruling was erroneous, it was not reversible error. At the trial on the merits sufficient evidence was introduced to decide the issues presented in the partition.

SETTLEMENT FUNDS COMMUNITY OR SEPARATE
Plaintiff's final contention is that the trial judge erred in finding that only $18,342.50 of the $200,000 settlement funds is owned by the community. After carefully reviewing the evidence, as discussed briefly in the above statement of the general facts, we conclude the trial judge was not manifestly erroneous nor clearly wrong in his factual finding that of the settlement funds $3,342.52 compensated the community for lost wages and $15,000 compensated the community for pain and suffering by the defendant during the seven months' existence of the community following the accident. Clearly, most of the lost wages, pain and suffering at the time of the settlement were attributable to post-dissolution damages.

CONTENTIONS IN ANSWER TO THE APPEAL
In his answer to the appeal, defendant contends first that the trial judge erred in not following the itemization of the settlement funds contained in the August 4, 1977 judgment of the state district court approving the Jones Act settlement. That judgment itemizes $1,782.80 for pain and suffering and $3,342.52 for loss of wages, a total of $5,125.32, for the period between the date of the accident and the dissolution of the community. As stated above, the district judge found the same figure for loss of wages during the community, but he increased the figure for pain and suffering from $1,782.80 to the sum of $15,000.
In effect, defendant's argument is that the judgment approving the Jones Act settlement is res judicata in the present partition suit. This argument has no merit. LSA-C.C. Article 2286 provides the essential elements of res judicata: (1) The thing demanded must be the same; (2) The demand must be founded on the same cause of action; (3) The demand must be between the parties; (4) The demand must be formed by them against each other in the same quality. All of these necessary elements are missing here. The thing demanded was not the same in the Jones Act suit as in the present partition, nor is the demand founded on the same cause of action, nor is it between the same parties, nor is it formed between the parties in the same quality.
Defendant's next contention in his answer to the appeal is that the trial judge erred in denying his reconventional demand for damages in the sum of $95,200 for wrongful issuance of the temporary restraining order. As stated above, the trial judge did award defendant $500 as attorney's fees for the wrongful issuance of the temporary restraining order. However, the judge found defendant suffered no other damages in the short time the temporary restraining order was in existence. Despite defendant's arguments that he suffered great emotional distress when all of his settlement funds were restrained by the *196 temporary restraining order, we find no manifest error by the trial judge.
Defendant's next contention is that the trial judge erred in not recalling the preliminary injunction upon rendition of the judgment in this partition action. Since the preliminary injunction is not in the record before us, we cannot determine whether it provides for dissolution upon the final settlement of the community and disbursement of proceeds in conformance with the judgment. Out of an abundance of precaution, we will amend the trial court judgment to provide that upon final settlement of the community and disbursement of the funds the preliminary injunction will be lifted.

DECREE
For the reasons assigned, the judgment appealed is amended to provide that upon final settlement of the community and disbursement of the proceeds, in compliance with the judgment appealed, the preliminary injunction will be lifted. Otherwise than as amended, the judgment appealed is affirmed. All costs of this appeal must be paid from community funds.
AFFIRMED, AS AMENDED.